1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   RICHARD ALEX WILLIAMS,                    No. 2:03-cv-0721-KJM-AC

12                  Petitioner,

13        v.                                   ORDER

14   CHERYL PLILER, Warden,

15                  Respondent.

16

17            On June 26, 2014, the previously assigned district judge granted petitioner's

18   application for a writ of habeas corpus.  (ECF No. 114.)  The motions currently pending before

19   the court are petitioner's motion for release (ECF No. 129) and respondent's cross-motion to deny

20   petitioner's release while respondent pursues an appeal (ECF No. 134).  Respondent requests that

21   the court deny petitioner's motion, arguing petitioner is "a serious flight risk and a danger to the

22   community . . . ."  (*Id.* at 2.)  Alternatively, respondent asks the court to set "bail at $1,000,000 as

23   a condition of [petitioner's] release."  (*Id.*)  The court held a hearing on the matter on October 10,

24   2014, at which Victor S. Haltom appeared for petitioner and Carlos Martinez appeared for

25   respondent.  As explained below, the court DENIES petitioner's motion.

26   I.       BACKGROUND

27            In 1998, petitioner Richard Alex Williams was convicted in California state court

28   of one count of murder, in violation of California Penal Code section 187(a), with the special

1   circumstance that the murder was committed "by means of discharging a firearm from a motor

2   vehicle, intentionally at another person outside the vehicle with the intent to inflict death," *id.*

3   § 190.2(a)(21); and two counts of attempted murder, in violation of Penal Code sections 664 and

4   187(a).  (ECF No. 105 at 1.)  He received a sentence of life imprisonment without the possibility

5   of parole for the murder conviction and an aggregate determinate term of ten years and eight

6   months for the attempted murder charges.  (*Id.*)

7        Petitioner first filed a petition for writ of habeas corpus in 2003 (ECF No. 1),

8   arguing, *inter alia*, that the state trial prosecutor exercised a peremptory challenge to exclude an

9   African-American prospective juror based on her race in violation of the Equal Protection Clause

10  of the Fourteenth Amendment (*see generally* ECF No. 63).  The court denied petitioner's first

11  application in 2008.  (*See* ECF No. 40.)  Petitioner appealed that order (ECF No. 42), and in

12  2011, the Ninth Circuit reversed the district court's denial of the petition, concluding that the

13  district court had erred in two ways.  (ECF No. 50 at 1–2.)  First, the Ninth Circuit held that the

14  district court had erred in according deference to the trial court's credibility determination

15  because the state trial court never reached the step-three inquiry under *Batson v. Kentucky*,

16  476 U.S. 79 (1986).  (ECF No. 50 at 3.)  Second, it was error to conduct a limited comparative

17  juror analysis by comparing the stricken juror to one other stricken juror, as opposed to the

18  empaneled jurors.  (*Id.*)  The Ninth Circuit ordered as follows:

19        On remand, the district court should conduct a full step-three
          inquiry that includes a proper comparative juror analysis. In
20        conducting that comparative juror analysis, the district court should
          consider all of the juror questionnaires from Williams's trial. Those
21        juror questionnaires were properly presented to the state courts, but
          were not presented to the district court.
22

23  (*Id.* at 4.)

24        Subsequently, the previously assigned magistrate judge ordered petitioner to file

25  an amended petition (ECF No. 61 at 1), which petitioner did (ECF No. 63).  In 2012, the same

26  magistrate judge recommended that petitioner's amended petition for a writ of habeas corpus be

27  granted.  (ECF No. 73 at 32.)  Thereafter, in objecting to the recommendation, respondent moved

28  for an evidentiary hearing to examine the demeanor and credibility of Robert Gold, the district

2

attorney who tried petitioner's case and who allegedly exercised his peremptory strikes in violation of the Constitution.  (ECF No. 78 at 4.)  The magistrate judge granted the request and presided over an evidentiary hearing on February 14, 2013.  (ECF No. 101.)  Subsequently, yet another newly assigned magistrate judge vacated the original findings and recommendations and filed new ones (ECF No. 105), which the previously assigned district judge adopted in full (ECF No. 114).  Hence, petitioner's amended application for a writ of habeas corpus was granted on June 27, 2014 (*id.*), and judgment was entered on the same day (ECF No. 115).  On July 21, 2014, respondent filed a notice of appeal (ECF No. 117) and a motion to stay pending appeal (ECF No. 116).  The court granted the motion to stay, staying retrial of petitioner during the pendency of respondent's appeal.  (ECF No. 132 at 5.)  As to petitioner's release, however, the court referred the case "to the Probation Office for a report and recommendation on whether petitioner is an appropriate candidate for supervised release pending appeal . . . ."  (ECF No. 135.) The Probation Office provided a report on October 8, 2014.  At hearing on the instant motions, petitioner objected to certain factual findings in the report.  This court directed petitioner to file his objections with the Probation Office and directed the Probation Office to respond to those objections.  The court has now received the Probation Office's final report and response to petitioner's objections.

The Probation Office report confirms its initial recommendation that petitioner remain in custody.  (Prob. Rep. at 9.)  Specifically, while the report finds petitioner's flight risk to be low to moderate, it recommends denying release because of a motive to flee, as petitioner is still facing a possible life imprisonment following retrial or reversal on appeal, and because petitioner will be a danger to the community, as he has a history of violence and substance abuse. (*Id.*)

II.     LEGAL STANDARD

A district court retains jurisdiction to issue orders concerning the custody or enlargement of a habeas petitioner even after an appeal of the grant or denial of habeas relief has been processed.  *Stein v. Wood*, 127 F.3d 1187, 1190 (9th Cir. 1997).

/////

1    There is a presumption of release where a prisoner has been granted habeas relief.

2  *See Hilton v. Braunskill*, 481 U.S. 770, 774 (1987); Fed. R. App. P. 23(c).  This presumption,

3  however, "may be overcome if the traditional stay factors tip the balance against it."  *Hilton*,

4  481 U.S. at 777.  These factors are: (1) whether the stay applicant has made a strong showing of

5  likelihood of success on the merits, which, here, means it is reasonably likely that the Ninth

6  Circuit will conclude the district court's decision was erroneous; (2) whether the applicant will be

7  irreparably injured without a stay; (3) whether the issuance of the stay will substantially injure the

8  other parties interested in the proceedings; and (4) where the public interest lies.  *Id.* at 776.  "The

9  most important factor is the first, that is, whether the state has made a strong showing of likely

10  success on the merits of its appeal of the district court's decision."  *Haggard v. Curry*, 631 F.3d

11  931, 935 (9th Cir. 2010).  The stay factors, however, contemplate individualized judgments in

12  each case and "the formula cannot be reduced to a set of rigid rules."  *Hilton*, 481 U.S. at 777.

13    The Supreme Court has observed that how the factors play out "may depend to a

14  large extent upon determination of the State's prospects of success in its appeal."  *Hilton*,

15  481 U.S. at 778.  For example, "[w]here the State establishes that it has a strong likelihood of

16  success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the

17  merits, continued custody is permissible if the second and fourth factors in the traditional stay

18  analysis militate against release."  *Id.*  On the other hand, as a general matter, "[w]here the State's

19  showing on the merits falls below this level, the preference for release should control."  *Id.*

20    At the same time, the Supreme Court in *Hilton* further observed that in

21  determining whether to release a successful habeas petitioner from custody, a court can also take

22  into account (a) petitioner's possibility of flight; (b) the potential danger to the public; and (c) the

23  state's interest in continuing custody and rehabilitation.[1]  *Id.*  "[A] district court has broad

24  discretion in conditioning a judgment granting habeas relief, including whether or not to release a

25  prisoner pending appeal."  *Stein*, 127 F.3d at 1190.

26    ─────────────────
[1] "Although the *Hilton* Court does not specify, it appears that danger to the public, risk of
27  flight, and the state's interest in continuing custody and rehabilitation are appropriately
considered as part of the second and fourth equitable factors."  *Franklin v. Duncan*, 891 F. Supp.
516, 519 (N.D. Cal. 1995).

28

1    III.    <u>ANALYSIS</u>

2            A.      Likelihood of Success

3                    In its motion to stay,[2] previously granted, respondent made two main arguments.

4    (ECF No. 116 at 1–2.)  First, respondent contends it is likely to succeed on its argument before

5    the Ninth Circuit that the district court had erred in not applying the deferential standard of

6    review under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d).

7    (*Id.* at 7–10.)  Second, in the alternative, assuming AEDPA does not apply, respondent contended

8    it made out a substantial case it was likely to succeed on the underlying merits of the *Batson*

9    issue.  (*Id.* at 10–52.)

10                   As to respondent's first argument, petitioner countered it was implausible the

11   Ninth Circuit would apply AEDPA.  (ECF No. 123 at 28–29.)  As to respondent's second

12   argument, petitioner countered respondent did not demonstrate a fair prospect of likelihood of

13   success on the merits.  (*Id.* at 29–32.)

14                   In adopting the magistrate judge's findings and recommendations on the merits of

15   the petition, the court rejected respondent's argument that the AEDPA deferential standard of

16   review should apply in this case.  (ECF No. 114 at 2–4.)  The court rejected the argument for two

17   reasons:

18                   First, . . . [a]cceptance of respondent's argument would run contrary
19              to the spirit of the Ninth Circuit's decision in this case.  Moreover,
                the finding required at step three of *Batson* is whether the
                peremptory strike at issue was motivated in substantial part by race.
20              The state Court of Appeal did not resolve this question.

21   (*Id.* at 4 n.3.)

22                   In addition, the court in its order granting the stay found respondent did not

23   establish a strong likelihood of success on its second argument.  Specifically, the court found that

24                   respondent has not made a strong showing that she is likely to
25              succeed on the merits of her legal argument that petitioner's *Batson*
                claim should be governed by the deferential standard of review
                under [AEDPA], rather than the *de novo* review required by the
26              United States Court of Appeals for the Ninth Circuit and applied by

27   _____

28              [2]  The court references respondent's motion to stay because respondent did not separately
     address the likelihood of success factor in its motion to deny release.

                                                        5

1

2

this court.  The factual questions on appeal are vigorously contested by the parties, and this court cannot find that respondent has made a "strong showing" that she is likely to prevail on the merits of her factual arguments on appeal.

3

4

(ECF No. 132 at 3.)

5            The court finds respondent's AEDPA argument unavailing under the law of the

6     case doctrine, whereby "a court is generally precluded from reconsidering an issue previously

7     decided by the same court, or a higher court in the identical case."  *Ingle v. Circuit City*, 408 F.3d

8     592, 594 (9th Cir. 2005) (internal quotation marks omitted).  The purpose of the doctrine is "to

9     maintain consistency and avoid reconsideration of matters once decided during the course of a

10    single continuing lawsuit."  *Id.* (internal quotation marks omitted).  A district court's decision to

11    apply the doctrine is reviewed for an abuse of discretion.  *Id.*  "A district court abuses its

12    discretion in applying the law of the case doctrine only if (1) the first decision was clearly

13    erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was

14    substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would

15    otherwise result."  *Id.*

16            Here, the Ninth Circuit held that AEDPA deference did not apply "because the

17    state trial court applied the wrong legal standard in determining whether [petitioner] made out a

18    prima facie violation at *Batson* step one."  (ECF No. 52 at 2.)  Respondent has not shown that

19    decision was clearly erroneous, the law or the record has changed, other circumstances have

20    changed, or a manifest injustice would otherwise result.  *Id.* at 594.  Respondent is unlikely to

21    succeed on its argument before the Ninth Circuit that the district court erred in not applying the

22    AEDPA deferential standard of review.

23            As to respondent's second argument, that it "has at the very least presented a

24    substantial case on the merits warranting a stay" (ECF No. 116 at 13), the court finds it

25    unpersuasive as well.  The court granted habeas relief on the basis of discriminatory use of

26    peremptory strikes.  (ECF No. 105.)  The magistrate judge's thorough analysis, supported by the

27    factual record and the applicable law, demonstrated "petitioner [had] carried his burden of

28    proving . . . the prosecutor was motivated in substantial part by race."  (*Id.* at 42.)  The court

1  adopted the magistrate judge's findings in full.  (ECF No. 114.)  The court cannot say respondent

2  has presented a substantial case on the merits.

3          Because respondent has shown neither a strong showing that it is likely to succeed

4  on its appeal nor a substantial case on the merits of its appeal, this factor weighs in favor of

5  release.

6          B.      Irreparable Injury

7          In analyzing the irreparable injury element, courts consider "the [s]tate's interest in

8  continuing custody and rehabilitation pending a final determination of the case on appeal . . . ."

9  *Hilton*, 481 U.S. at 777.  A state's interest "will be strongest where the remaining portion of the

10 sentence to be served is long, and weakest where there is little of the sentence remaining to be

11 served."  *Id.*

12         Here, petitioner was sentenced to life with no possibility of parole for murder.

13 (ECF No. 105 at 1.)  Petitioner has served eighteen years of imprisonment, but at thirty-six is still

14 relatively young.  (ECF No. 132 at 4.)  This factor weighs in favor of staying petitioner's release

15 because "the remaining portion of the sentence to be served is long. . . ."  *Hilton*, 481 U.S. at 777;

16 *Franklin*, 891 F. Supp. at 521 ("Where . . . [the] petitioner has a life sentence and the remaining

17 portion of the sentence to be served is long, this factor weighs against release.").  In addition, it is

18 undisputed that under California law, petitioner would be presumptively ineligible for bail.

19 (Super. Ct. of Cal., Cnty. of Sacramento, Felony & Misdemeanor Bail Schedules at 6; ECF No.

20 134 at 6–8.)

21         The state's interest is attenuated because of the court's conclusion that the

22 prosecutor exercised his peremptory strikes in violation of the Constitution and because the state

23 has made neither a strong showing of likelihood of success nor a substantial case on the merits of

24 the appeal.  *See Hilton*, 481 U.S. at 778; *see also Douglas v. Singh*, No. C-11-5370, 2013 WL

25 2645175, at *5 (N.D. Cal. June 12, 2013).

26         On balance, however, this factor weighs against release.

27 /////

28 /////

7

1          C.      The Interests of Other Parties

2                  As to other parties' interests, the record does not reflect that release will

3  substantially injure any other party interested in the proceeding.  *See Haggard*, 631 F.3d at 939.

4          D.      Public Interest

5                  As noted, the *Hilton* Court teaches that flight risk and danger to the community are

6  relevant factors for a district court to consider in analyzing the public interest factor.  *See* 481

7  U.S. at 777.

8                  Respondent claims petitioner poses a flight risk.  (ECF No. 116 at 50–51.)  Yet,

9  the probation report states petitioner "presents as a low-moderate risk of non-appearance" and

10  that petitioner "has a tremendous amount of familial support and a release plan in place that has

11  been verified . . . ."  (Prob. Rep. at 9.)  While pointing to murder and attempted murder as serious

12  charges, which by their nature may give petitioner a strong motive to flee, respondent has not

13  presented evidence showing petitioner poses a particularized flight risk.  *See Franklin*, 891 F.

14  Supp. at 521.  For example, respondent provides no evidence that petitioner has access to

15  significant financial or travel resources.  Rather, petitioner's financial resources appear modest.

16  *See Walker v. Martel*, No. 94-1997, 2011 WL 2837406, at *3 (N.D. Cal. July 13, 2011)

17  ("Respondent has made no particularized showing that petitioner poses a flight risk."); *Cowans v.*

18  *Marshall*, No. 05-6276, 2009 WL 4929406, at *5 (C.D. Cal. Dec. 10, 2009) (finding respondent

19  provides no evidence that the petitioner "with strong family ties and viable parole plans, is a

20  significant flight risk if released without supervision pending [r]espondent's appeal to the Ninth

21  Circuit").

22                  Respondent also claims petitioner poses a danger to the community.  (ECF No.  34

23  at 6–8.)  In that regard, the evidence before the court is mixed.  The conviction offenses occurred

24  eighteen years ago when petitioner was only eighteen.  (Prob. Rep. at 1.)  Prior to those offenses,

25  petitioner had no "adult arrests or convictions."  (*Id.* at 3.)  No evidence was presented at trial

26  indicating petitioner was a member of a gang, which is consistent with petitioner's statements and

27  "is supported by state prison records . . . [indicating] 'No documentation of affiliation with a

28  STG' (Security Threat Group)."  (*Id.*)  In addition, the Probation Report notes petitioner's mental

8

1   health is sound.  (*Id.* at 6.)  Petitioner's "thinking has changed since his arrest"; he is now "'into

2   tutoring others, coaching others, helping others along the way,'" and petitioner "has grown

3   through education."  (*Id.* at 7.)  Both petitioner's mother and the mother of petitioner's son

4   confirm petitioner's "'large network of support'" and that petitioner "is a much different person

5   than he was [eighteen] years ago."  (*Id.* at 8.)

6          On the other hand, there is evidence that petitioner poses a threat to the

7   community.  Although there is no documented evidence of gang membership, "he does have a

8   history of criminal associations . . . and continued violence and behavioral issues while in prison."

9   (*Id.* at 9.)  In 1993, petitioner was arrested for burglary at the age of fifteen, but the matter was

10  dismissed at intake.  (*Id.* at 2–3.)  In 1994, petitioner was arrested for attempted burglary and

11  trespassing.  (*Id.* at 3.)  When petitioner did not appear for that matter, he was arrested and two

12  other charges were added, possession of a controlled substance, 0.3 grams of cocaine base, and

13  providing false information to a peace officer.  (*Id.*)  Except for the drug possession charge, the

14  remaining charges were dismissed, and petitioner was placed on informal probation.  (*Id.*)  In

15  1996, petitioner was again arrested for providing false identification to a peace officer; that matter

16  was dismissed as well.  (*Id.*)

17         Moreover, while in custody, petitioner has had "some disciplinary problems."

18  (Resp. to Objections at 3.)  Specifically, in 2006, prison administration found petitioner guilty of

19  spitting on a correctional officer; the Imperial County District Attorney's Office declined to

20  prosecute the matter.  (*Id.*)  In 2008, petitioner was found guilty of participating in a prison riot;

21  the Sacramento County District Attorney's Office declined to prosecute the matter.  (*Id.*)  In

22  2010, petitioner was found guilty of battery on another inmate.  (*Id.*)  Finally, in 2011, petitioner

23  was found guilty of possessing individually packaged marijuana with the intent to distribute. The

24  matter was referred to the Sacramento County District Attorney's Office who declined

25  prosecution . . . .  Petitioner appealed the matter which was partially granted, and he was found

26  guilty of a 'lesser Division B offense' and sanctioned accordingly."[3]  (*Id.*)  While "[t]here have

27  ───────────────

28         [3]  In 2011, petitioner was found guilty of possession of a controlled substance with intent to distribute, a Division "A-2" offense.  (ECF No. 134-4 at 22.)  While the record is unclear to

1   been no documented disciplinary issues since 2011" (*id.*), the relative recency of petitioner's last

2   two disciplinary issues give the court pause.

3          The Probation Report, in utilizing a pretrial risk assessment tool, calculates a

4   10 percent chance petitioner may commit a new offense if released.  On balance, petitioner poses

5   some risk of danger to the public.  (*See* Prob. Rep. at 8.)

6          While the court has carefully considered whether conditions can mitigate danger,

7   and weighed the offer of the mother of petitioner's child to provide "a safe and healthy

8   environment" for petitioner in Sacramento (*id.* at 8), this offer would locate petitioner in the

9   Strawberry Manor area in Sacramento, where his former friends and codefendants may remain.

10  (*Id.* at 9.)  Although petitioner's mother has offered her home in Los Angeles, where petitioner's

11  son also resides, the court is not prepared to approve petitioner's residency in another district at

12  some distance from the court where he is likely to be retried if the state does not prevail on

13  appeal.  (*Id.* at 7–9.)

14  IV.   CONCLUSION

15         For the foregoing reasons, because petitioner is not an appropriate candidate for

16  supervised release, the court DENIES petitioner's motion for release and GRANTS respondent's

17  cross-motion to deny petitioner's motion for release.

18         IT IS SO ORDERED.

19  DATED:  February 11, 2015.

21  _____
    UNITED STATES DISTRICT JUDGE

27  what Division "B" offense the charge was downgraded after petitioner's appeal, the most related
    Division "B" offense is the "[u]nauthorized possession of any controlled substance . . . including
28  marijuana . . . ."  Cal. Code Regs. tit. 15, § 3323(d)(7).

10